Good morning. Good morning. May it please the court, Assistant United States Attorney Nicole Mariani on behalf of the United States. The outcome of this case is controlled by this court's binding precedent. United States v. Fritz holds that Florida robbery, including Florida robbery before the year 2000, is categorically a violent felony under the Armed Career Criminal Acts Elements Clause. According to the district court's grant of Lee's 2255 motion, which was based on its determination that Florida robbery before 2000 is not a violent felony, it's contrary to this court's law and should be reversed. Fritz premises holding that all Florida robbery is a violent felony on three independent grounds, all of which are equally applicable to the present case. First Fritz held that this court remained bound by United States v. Dowd. Dowd is a 2006 case in which this court held that a 1974 Florida robbery conviction is undeniably a violent felony under the ACCA's Elements Clause. That case cited to the Elements Clause, and I don't disagree with you that it's a holding. Right. It didn't contain any analysis whatsoever, right? It did not. But Fritz held that it was binding precedent and it had not been a real robbery. No, I agree. I don't disagree with you. It is one sentence. Right. The first case that decided the issue in the circuit has no analysis save for the statutory citation to the Elements Clause. Right. And the statement that it's undeniably a violent felony. That's all. The second case which Fritz referenced is saying it also remains bound by United States v. Lockley. That's a 2011 case that a 2001 Florida robbery conviction was a crime of violence under the Sentencing Guidelines Elements Clause. Lockley undertook a formal categorical approach and examined the bare elements of the least culpable conduct criminalized by Florida robbery and found that it satisfied the Elements Clause. The final ground. Is there any Elements Circuit precedent that looks into how much force is necessary to overcome a victim's resistance under the Florida robbery statute? Fritz undertook that. That's sort of the third holding of Fritz. Fritz looked at the Florida Supreme Court law. But it didn't talk about how much violence was necessary, did it? It did not. But what Fritz did hold and state was that... So my question is, Fritz didn't. Is there other precedent that you can point us to where the Elements Circuit has analyzed that? No, Your Honor. I can't. What Fritz did state as part of its holding, however, was that the Florida Supreme Court has always required the, quote, substantial degree of force that is required by the ACCA's Elements Clause for robbery. Because Fritz is a published case that has not been overruled or abrogated by this court sitting on bunk or the United States Supreme Court. I think we all understand that. I'm just looking for some help with the analysis that we're supposed to do about the amount of violent force. And along those lines, I don't think I disagree with you with regards to the state of our case law. But my question to you is, if we were writing, and it may not matter to the ultimate outcome of this case, but it matters at least to some members of the panel, there are Florida cases both pre- and post-1999, the break when Florida created a separate statute for sudden snatching, which sustain robbery convictions with almost no show of force whatsoever. Not under the sudden snatching scenario, but under other scenarios. For example, a defendant who opens a door to a car, sits in the car for a couple of minutes, seconds, and then takes a purse and gets out of the car. A person who walks into a bank without a gun says, give me your money. Teller tries to give him bait money, shakes his head and says no. Gets real money and leaves. I mean, you've got those sorts of cases where it seems like it's far removed from what the ACCA is intended to reach. What's your thought on that? Well, my thought on that is what you're referencing are some Florida intermediate appellate court decisions. And whether or not they are correctly applying the law of the Florida Supreme Court is a That's a question. And certainly, if the intermediate appellate courts are incorrectly applying Florida Supreme Court, that should be remedied. But the remedy for that is in the state courts, either through direct appeals or collateral proceedings. Under this ACCA analysis, we've been instructed to look to the law of Florida's highest courts. And here we have the Florida Supreme Court in Mondstaka and then again in Robinson in 1997 sort of explaining that we need more than minimal force to differentiate a robbery from a larceny. And I think some of those cases are probably getting the law wrong. But again, our concern is with what the Florida Supreme Court has said. And under the Florida Supreme Court law, what's required is this active physical struggle between the perpetrator and the victim where the victim gives resistance and the perpetrator uses overcoming and opposing force to overcome that resistance. You have two people who should be involved in sort of a physical struggle, a physical comes in with superior force and aggression and strength to take an item away from the victim's person. I think that's akin to the slap referenced in Johnson. And so if the Florida courts are correctly applying Florida Supreme Court law, then we shouldn't be running into this situation. We should be running into a situation where a force capable of causing physical pain to the victim or physical injury is being used. And I think another thing to look at, and Lee points out in her case, some other state robbery statutes that have been analyzed by other circuits. And I think that actually can help give this court a little bit more comfort with the direction of where Fritz and the 11th Circuit law has gone. In the other circuits, in the other state. Maybe, maybe not. I mean, the 9th Circuit went the other way. The 9th Circuit did go the other way.  state courts. The circuits that have found Florida robbery statutes that are not a violent felony, sort of excluding those in the 9th Circuit, and those are Kansas, Maine, Virginia, Missouri, Arkansas, Massachusetts, and North Carolina. All of those robbery statutes encompass both the common law crimes of robbery and larceny. In all those cases, snatching counts as a robbery. Accidental force counts as a robbery. Whereas all the other circuits, and it's some of those same circuits that have found that state robbery laws are categorical felonies, and those would be Colorado, Michigan, South Carolina, Indiana, Maryland, and Tennessee. All of those state robbery statutes, as does Florida, follow the common law definition of robbery, which differentiates robbery and larceny with the use of force. The Florida Supreme Court has been clear that it follows the common law definition of robbery, and that larceny is a lesser included offense, and that the difference between larceny and to overcome the resistance of the victim, which is why I think the Florida robbery statute is similar to all of those other statutes that other courts have found to be violent felonies under the Elmholtz Clause. If this court has no further questions, I'll reserve my remaining time for rebuttal. Thank you. Thank you. Good morning. Good morning. May it please the court. Vanessa Chen, Assistant Federal Public Defender for Michael Lee. The pertinent question that the government misstates that really controls this case is when the government says that this court, as part of its motive analysis, must defer to the Florida Supreme Court's interpretation of the law at the time. It ignores the Supreme Court's mandate in McNeil from 2011, and this court's mandate in Rosales-Bruno in 2012, that the reviewing court must actually look at the law under which the defendant was actually convicted of. And that requires not only looking at the date of the conviction, but the DCA in which the defendant was convicted. The reason why FRITS does not control the- Before you get to FRITS, Ms. Chen. Yes, Your Honor. I'm sympathetic to your position, but you've got United States v. Dowd, which dealt at least in part with a 1974 conviction. What do you do with that case as a matter of binding precedent? Thank you, Your Honor. This court's prior panel precedent rule, as stated in Archer, says that subsequent panels are bound by a decision unless it is undermined or overruled by this court sitting on Bonk or the Supreme Court. But what the Archer rule holds is that unless and until intervening, superseding Supreme Court precedent comes in, which changes the framework by which this court evaluates and interprets a case, it is binding precedent. For that reason, Dowd does not control. As the court noted in its colloquy with government counsel, Dowd relies on one conclusory statement masquerading as analysis. Moreover, Dowd considered Shepard documents, which is inappropriate and not part of the strict categorical analysis mandated by DECOMP and certainly by Mathis. Referral to Shepard- Then you have post-DECOMP cases coming to the same conclusion. I assume Your Honor is referring to Lockley? FRITS. Lockley is distinguishable because, first of all, its residual clause holding has been abrogated by Samuel Johnson, leaving the elements clause holding, which has been abrogated by McNeil, Moncrief, DECOMP, Estrella, Howard, Welch, Mathis. I think Lockley is also distinguishable because it dealt with a post-Robinson, post-1999 robbery by sudden snatching enactment. It was a 2001 Florida attempted robbery. Lockley, furthermore, is distinguishable as this court held in Welch, which Welch, as a unanimous panel opinion of this court, predates FRITS and represents a separate carve out for FRITS that this court can use to distinguish FRITS and to travel upon to grant Mr. Lee relief. The Welch court, on direct appeal, held that, unlike Lockley, Welch, who had been convicted in the fourth DCA in 1996, could have been convicted for sudden snatching, but not Mr. Lockley, who was convicted in 2001, as that was post-statute, post-Robinson. That was because, crucial to Welch's mode of analysis and its formulation of Florida state law. I thought Welch involved a pre-Robinson conviction. Yes, your honor. The point I was trying to make is Welch dealt with a 1996 pre-Robinson conviction. It sought to distinguish Lockley, which was a post-Robinson conviction. Right. But then it comes to the conclusion that a pre-Robinson conviction counts. It held that it counted under the residual clause. The Supreme Court, on remand in 2006, addressed the question of whether this circuit erroneously denied Welch a certificate of appealability to challenge his ACCA conviction on the grounds that the residual clause was unconstitutionally vague. It said, on the present record, reasonable jurists at least could debate whether Welch is entitled to relief. It remanded to the 11th Circuit, and that case is still active on remand, to specifically resolve the elements clause question left open on direct appeal. If, as your honor is suggesting, that the issue were as clear-cut and settled that Lockley was dispositive of anything beyond a 2001 robbery, there would have been no need for the Supreme Court to remand Welch's case to the 11th Circuit to answer that open question in the first instance. My suggestion to you is that even if you are right about that, that just leaves Welch as a zero for now. It doesn't upset the law. It doesn't change the law. It doesn't modify the law, because it was only a residual clause holding and didn't address the elements clause, and so the elements clause is still pending. So Welch says nothing, one way or another, at least for us right now, correct? I understand your honor's point. Our position is that Welch does say something. Welch stands for the proposition that there is this carve-out for DCAs pre-Robinson, such as the fourth DCA for Mr. Welch, or such as the third DCA for Mr. Lee, in which case the intermediate appellate decisions of both the fourth DCA in Santiago, which held that any force, quote, be it ever so little, or in Mims, that the force in that case, if the does, while it satisfies the Florida robbery statute, does not qualify for the sort of Curtis Johnson level of violent physical force that is necessary to sustain an ACCA enhancement. Ms. Chen. My head is swimming with 11th Circuit and Florida precedence in a way that is unaccustomed. Is there a Florida Supreme Court case in which, on this statute or any other, in which the date of the conviction determines which interpretation of the law applies? I mean, there is a view, you know, that whatever the Florida Supreme Court has last said was always the law, even if it was misapprehended by that court or any other. Yes, Your Honor, and I understand that view. I think what this court must do when we apply the rule in McNeil, as interpreted through Rosales-Bruno, is if the Florida Supreme Court Your Honor is referencing is Monstoka from 1922, McLeod from 1976. Monstoka says the degree of force is immaterial, but only if such force is actually sufficient to overcome victim resistance. Then in 1976, the Florida Supreme Court says any degree of force suffices to convert larceny to robbery so long as the taking is not by stealth. In that case, focusing on the need for victim awareness. What happens after that, there are three third DCA cases that try to interpret the Florida Supreme Court statement in both Monstoka and McLeod. In 1977, the year after the Florida Supreme Court speaks in McLeod, the third DCA in Mims says if the victim resists in any degree and that resistance is overcome, it is robbery. What's notable about Mims is it's the year after McLeod is decided. Mims then later is cited by the Florida Supreme Court in 1997 in Robinson, and it is cited with approval as to the pre-Robinson state of the law in the third DCA as to what the third DCA's understanding and interpretation of that law was. Then we fast forward six years in the third DCA to 1983, which is still before Mr. Lee's 1988 convictions. I think you're not answering directly. I thought you might be working up to it, the jurisprudential question. Instead, you're applying an answer to it. The question is whether under the Florida Supreme Court's approach to questions of this sort, whether it looks to the date of the conviction in order to determine which interpretation of law applies so that it might have before it on the same day, two cases that different times under different interpretations of the law, would it decide them differently? I think that question can be answered as to whether or not it's pre-Robinson or post-Robinson. You're saying the answer is yes. They would look to what was the prevailing view of the law when the conviction occurred. Yes, and I think it would also... Doesn't that strike you as a bit peculiar? If they had two cases on the same day, the convictions arose under different interpretations, they had changed their interpretation or clarified the interpretation. Instead of saying, look, this is what the law means, it's always meant this, and let the chips fall where they may. I can understand why that would be an attractive proposition. However, the difficulty with that is taking a step back to the evolution of the strict categorical approach. When Dekamp came out or Mathis came out, the Supreme Court said, this is what we have always meant, going all the way back to Taylor. But what had happened during those 20 or 30 years is federal circuit courts applied what they thought the Supreme Court meant for them to do. The Supreme Court had to step in and say, no, no, no, this is what we really want you to do. This is what we really mean. That was in which case? In Dekamp and in Mathis. I was just drawing an analogy that it's a similar evolution here, where sometimes the Florida Supreme Court can believe that it has been clear and it has always been clear as to what the law is. You're talking about the practical realities on the ground. Yes, Your Honor. So the Supreme Court comes up with test one in case X, doesn't address the issue again for seven or eight years. The circuits are all over the place on what test one means. Seven years later, the Supreme Court comes up with case Y and they say, oh, test one really means text one plus two. And we meant this all along. And that's what you should have been applying. Then another seven years passes in case Z comes along and they say, oh, test number two is really one plus two minus half. And that's what you should have been applying all along. And in the meantime, although the Supreme Court, the ultimate organ of the law is telling you what the law should have been and what it meant, on the ground, the lower courts have been dealing with individuals and with the government under a misapprehension of what the law was. And people have been convicted and sentenced accordingly with that misapprehension. Right? That's the reality you're trying to get at. Yes, Your Honor. Sounds like a situation that might, which you might have invoked a rule of lenity. Yes, Your Honor. I don't think you did. So right now. Great idea, right? Moving on, this court can and should apply the carve out in Welch to Mr. Lee's situation, just as the Fourth Circuit perhaps was laboring under a misapprehension of what the Florida which is not a concession that we are making, but for purposes of argument, if that is true, so too was the third DCA at the time of Mr. Lee's conviction, such that for the same reasons articulated in Welch, for the same mode of analysis that applies for its same formulation of Florida case law and what this court is required to do in looking at those intermediate appellate decisions, this court should do so in its analysis of Moncrief's least culpable conduct rule. And it should hold that Mr. Lee was convicted at a time under a robbery statute that did not require the sort of injury causing, pain provoking physical force that Curtis Johnson requires to uphold an ACCA conviction. I see that my time is running out. If the panel does not have any other questions, we will rely on the arguments in our brief. Thank you very much. Thank you. What this case sort of comes back to at the end is that we have Fritz and the prior panel precedent rule. To get around Fritz, Mr. Lee attempts to cabin that case. It seems to narrowly hold that only in 1989, Florida robbery within Florida's second district court of appeals jurisdiction constitutes a violent felony. But that's not what Fritz held. Fritz was very clear throughout that it was holding that all Florida robbery convictions in every jurisdiction before the year 2000 were a violent felony. What do you tell someone, and I think you are right, Ms. Mariani, but what do you tell someone who was convicted of robbery by sudden snatching in a DCA where that theory was prevailing and is now serving a minimum 15-year sentence under ACCA because he purportedly committed violent felonies? What do you tell that person? Sorry. No, I mean, that's a horrible situation. If they were wrongly convicted under Florida law for a Florida crime. And now they're being wrongfully punished under federal law under one way of looking at it for having committed a violent felony, a felony nonetheless, but maybe a felony that wasn't violent. Right, and I mean, I wish there was more I could do for that person under this law, but given the state of our law, sort of the remedies available to them were a direct appeal or convicted of a crime for which they did not commit. That's true. They were convicted either pre-1999 when they actually committed was larceny, not robbery under the Florida Supreme Court's law. Right, but if they avail themselves of all available avenues and the Florida Supreme Court denied discretionary review and any post-conviction motion goes up to the same DCA that had the same view of the robbery statute, then that person's out of luck. He or she did everything possible, and then they try to get federal habeas relief. And the federal court says, whether or not you were convicted of this or that is a matter of state law and not a matter of federal due process. And that's the way the Florida courts are interpreting that statute. That's not a matter for a federal habeas court to be involved in. And so they've done everything they possibly can, and now they've got a 15-year minimum sentence. But then, I'm not sure how we could then have a remedy in this court, where then are we looking at every 2255, or not even, every sentencing raising Florida robbery and sort of trying to go behind the curtain of what the Florida Supreme Court has said the elements of that crime is, and looking at each individual conviction and seeing, did the facts really prove Florida robbery as it's properly defined? And that sort of analysis is kind of going far beyond what we've been permitted to do in determining whether or not, under the formal categorical approach, a crime is or is not a violent felony under the Elements Clause. And one last thing I'd just like to point out is, since sort of talking about this carve out that Ms. Chen is proposing, since Prince has been decided, this court has held in 15 unpublished cases, that Florida robbery is a violent felony. Eight of those cases, one of which Judge Martin was on the panel and one of which Judge Jordan was on the panel, found that a pre-1997 Florida robbery is a violent felony. None of them took into account the date or location of that conviction, because under Fritz, every Florida robbery is a violent felony. In fact, two of those cases were identical to the present case, it was Pace and Jackson, were both similar 2255 cases. And in both of those cases, this court reversed the grant of a 2255, based on a finding that the defendant's ACCA mandatory minimum sentence. Which is why, sort of, if in the sake of like, I mean, for lack of better words, I know there are sort of some fundamental unfairnesses, Your Honor, see in this scenario, but for the sake of being comprehensive and sort of treating everyone the same, that's why in this case, where this defendant was also convicted of a Florida robbery, we need to reverse the grant of the 2255 and reinstate the mandatory minimum armed criminal sentence. If you have no further questions. All right, thank you. All right, I think that concludes our arguments for the day.